Ryan L. Gentile, Esq.
Law Offices of Gus Michael Farinella, PC
110 Jericho Turnpike - Suite 100
Floral Park, NY 11001
Tel: 201-873-7675
Attorney for Plaintiff, Zainab Bibi,
on behalf of herself and all others similarly situated

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
Zainab Bibi, on behalf of herself
and all others similarly situated,

                                        **CLASS ACTION**
               Plaintiffs,                   **COMPLAINT**

    v.

ARS National Services Inc

        Defendant.
--------------------------------------------------------X

      Plaintiff, by and through her counsel, Ryan Gentile, Esq., as and for her complaint against the Defendant, on behalf of herself and pursuant to Rule 23 of the Federal Rules of Civil Procedure all others similarly situated, alleges as follows:

## INTRODUCTION

1. Plaintiff, on her own behalf and on behalf of the class she seeks to represent, brings this action to secure redress for the debt collection practices utilized by ARS National Services Inc. ("ARS" or "Defendant") in connection with their attempts to collect alleged debts from the Plaintiff and others.

2. Plaintiff alleges that the Defendant's collection practices violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA")

1

3. The FDCPA broadly prohibits conduct which harasses, oppresses or abuses any debtor; any false, deceptive or misleading statements in connection with the collection of a debt; unfair or unconscionable collection methods; and requires certain disclosures. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

4. The FDCPA is a strict liability statute which provides for actual or statutory damages upon the showing of a single violation. *See* Bentley v Great Lakes Collection Bureau, 6 F.3d 60, 62-63 (2d Cir. 1993).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's FDCPA claim pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

6. Venue and personal jurisdiction in this District are proper because:

   a. The acts giving rise to this lawsuit occurred within this District; and

   b. Defendant does business within this District.

## PARTIES

7. Plaintiff, Zainab Bibi is an individual natural person who at all relevant times resided in the City of Brooklyn, County of Kings, State of New York.

8. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

9. Defendant, ARS National Services Inc., is a corporation with its principal place of business located at 270 W. 2nd Drive Escondido, CA 92025. ARS may be served with process via their registered agent, The Prentice-Hall Corporation System, Inc., located at 80 State Street Albany, NY 12207.

10. The principal purpose of ARS is the collection of debts using the mail and telephone.

11. ARS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12. ARS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTS

13. On or before November 1, 2019, Plaintiff allegedly incurred a debt to JP Morgan Chase Bank, N.A. ("Chase") related to a Chase credit card with an account number ending in 0758 (the "Debt").

14. The Debt arose out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, namely fees emanating from a personal credit card account in Plaintiff's name that was issued by Chase.

15. The Debt arose out of a credit card account which Plaintiff opened for her personal use.

16. Plaintiff's credit card account that was issued by Chase was neither opened nor used by Plaintiff for business purposes.

17. Plaintiff's personal credit card account Debt to Chase is a "debt" as defined by 15 U.S.C. § 1692a(5).

18. Sometime after the incurrence of the Debt, but before the initiation of this action, Plaintiff was alleged to have fallen behind on payments owed on the alleged Debt.

19. The Debt went into default because of non-payment.

20. At a time known only to Defendant, Plaintiff's Debt was referred to ARS by Chase for collection.

21. The Debt was never assigned to ARS.

22. ARS was never transferred, sold, or assigned any interest or rights with regard to the Debt.

23. ARS is not the owner of the Debt nor the Plaintiff's creditor, but rather is merely a third-party debt collector with no legal interest or right in the Debt.

24. ARS contends that the Debt is in default.

25. The Debt was in default at the time the Debt was referred to ARS for collection.

26. The Debt was past-due at the time the Debt was referred to ARS for collection.

27. At all times relevant hereto, Defendant acted in an attempt to collect the Debt.

28. On or about July 11, 2020, ARS mailed or caused to be mailed a letter to Plaintiff (the "Letter"). (Annexed and attached hereto as Exhibit A is a copy of the Letter dated July 11, 2020 that ARS mailed to the Plaintiff, except the undersigned counsel has in accordance with Fed. R. Civ. P. 5.2 redacted the financial account numbers and Plaintiff's street address to protect his privacy)

29. ARS mailed the Letter dated July 11, 2020 attached as Exhibit A as a part of their efforts to collect the Debt.

30. Plaintiff received the Letter in the mail.

31. Plaintiff read the Letter upon receipt of the letter in the mail.

32. The Letter was sent in connection with the collection of the Debt.

33. The Letter seeks to collect the Debt.

34. The Letter conveyed information regarding the Debt including the Balance Due, ARS Reference number and a request for payment.

35. The Letter attached as Exhibit A is a "communication" as that term is defined by 15 U.S.C. § 1692a(2).

4

36. The Letter is designed to make Plaintiff think that it is the first letter she is receiving from ARS regarding the Debt.

37. The Letter attached as <u>Exhibit A</u> states in relevant part:

> Please be advised that the above-referenced account has been placed with ARS for collection.

38. The Letter then contains other information, including information about Plaintiff's dispute rights under § 1692g, that further makes the Letter seem like it was ARS's initial communication with the Plaintiff regarding the Debt.

39. ARS only includes information about a consumer's dispute rights under § 1692g in the initial letter they send to a consumer regarding a debt.

40. The Letter was not the first debt collection letter the Plaintiff received from ARS regarding the Debt.

41. ARS had previously sent collection letters to Plaintiff regarding the Debt on at least two occasions, specifically on November 5, 2019 and sometime prior to November 5, 2019.

42. ARS included an "ARS Reference" number on all the collection letters that they sent to the Plaintiff.

43. Sometime between November 5, 2019 and July 11, 2020, ARS unilaterally changed the reference number that they assigned to the Debt and which had appeared on all the letters ARS had sent to Plaintiff regarding the Debt prior to July 11, 2020.

44. After ARS changed the "ARS Reference No." for the Debt, ARS sent Plaintiff the Letter containing the new ARS Reference Number and information about Plaintiff's dispute rights under § 1692g.

45. By changing the "ARS reference number" that had appeared in all the collection letters regarding the Debt sent to Plaintiff prior to July 11, 2020, ARS made it appear that the Debt referenced in

the Letter was a new and different debt, with a new and different ARS reference number, from the one ARS had previously tried to collect from Plaintiff. In reality, it was the same Debt, but ARS changed their ARS reference number for the Debt and then sent one of their standard format initial collection letters to Plaintiff with the "new" ARS reference number to falsely, deceptively and misleadingly make the Debt appear like it was a new and different debt that ARS was only now attempting to collect for the first time.

46. ARS collection practice is a high-volume practice.

47. ARS's debt collection practice is largely automated and utilizes standardized form letters.

48. Documents in the form represented by Exhibit A are regularly sent by ARS to collect debts.

49. Exhibit A is a standardized form letter.

50. Exhibit A is a computer-generated form letter.

51. ARS mailed or caused to be mailed letters in the form of Exhibit A over the course of the past year to hundreds of New York consumers from whom ARS attempted to collect a consumer debt.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

52. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

53. The conduct of the Defendant in this case violates 15 U.S.C. §§ 1692, 1692e(10), and 1692g.

54. Collection letters and/or notices, such as the Letter attached as <u>Exhibit A</u> sent by Defendant to Plaintiff, are to be evaluated by the objective standard of the "least sophisticated consumer."

55. ARS violated 15 U.S.C. § 1692e(10) because they made it appear that the Letter was the initial notification or first letter they were sending the Plaintiff regarding the Debt and this was false, deceptive and misleading. The Letter was not the initial notification regarding the Debt that ARS sent to Plaintiff because ARS had previously sent collection letters to Plaintiff regarding the Debt. However, ARS changed the reference number they had assigned the Debt sometime between November 5, 2019 and July 11, 2020 to falsely, deceptively and misleadingly make it appear to Plaintiff in the Letter that ARS was trying to collect a new debt with a different ARS reference number from the Debt they were previously trying to collect, when in reality, it was the same Debt.

56. ARS violated 15 U.S.C. § 1692e(10) and § 1692g(a)(3) because their statement in the Letter that ARS would assume the Debt is valid unless the Plaintiff disputed the Debt within 30 days of their receipt of the Letter was false. As stated previously, ARS had sent Plaintiff collection letters regarding the Debt prior to the Letter dated July 11, 2020. Thirty days from the date Plaintiff received the actual "initial notice" from ARS regarding the Debt (sometime prior to November 5, 2019) had come and gone, and ARS has already legally assumed the Debt to be valid before sending the Letter on July 11, 2020.

57. ARS violated 15 U.S.C. § 1692e(10) and §1692g(a)(4) because their statement in the Letter that ARS would provide verification of the Debt if the Plaintiff disputed the debt in writing within 30 days of receipt of the Letter was false. As stated previously, ARS had sent Plaintiff collection letters regarding the Debt prior to the Letter dated July 11, 2020. Thirty days from the date

7

Plaintiff received the actual initial notice from ARS regarding the Debt (sometime prior to November 5, 2019) had come and gone, and ARS was under no legal obligation to verify the Debt upon receipt of a written dispute within 30 days of Plaintiff's receipt of the Letter.

58. The false statements in the Letter are material because they would influence a least sophisticated consumer's decision to pay the debt by falsely making it seem like the debt is a new and different debt.

59. The false statements in the Letter are material because they would confuse a least sophisticated consumer as to their rights to dispute the debt, rights which had already passed.

60. The violations of the FDCPA described herein constitute *per se* violations.

61. Plaintiff has alleged a particularized injury because the Letter was mailed and directed to her.

62. Plaintiff has alleged a concrete harm because the FDCPA creates a substantive right to be free from abusive debt communications and Defendant's violations of the FDCPA resulted in concrete harm to Plaintiff.

63. Defendant is liable to the Plaintiff and the proposed class pursuant to 15 U.S.C. § 1692k because of the above FDCPA violations.

## CLASS ALLEGATIONS

64. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

65. This action is brought as a class action. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

66. The Class is initially defined as (a) all consumers (b) with a New York address (c) to whom ARS sent a letter which is materially identical or substantially similar to Letter attached as <u>Exhibit A</u> to the Complaint (d) which was not returned as undeliverable (e) on or after a date one year prior to the filing of this action (f) which letter included the alleged conduct and practices described herein.

67. The class definition above may be subsequently modified or refined in an amended complaint or in any motion for class certification.

68. The proposed class specifically excludes the United States of America, the states of the Second Circuit, counsel for the parties, the presiding United States District Court Judge, the Judges of the United States Court of Appeals for the Second Circuit and the United States Supreme Court.

69. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

    i. **Numerosity**: The Plaintiff is informed and believes and on that basis alleges, that the class defined above is so numerous that joinder of all members would be impracticable. Upon information and belief, based on the fact that the Complaint involves a form collection letter, there are at least 40 members of the class. The exact number of class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery. The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by the Defendant.

ii. **Common Questions Predominate**: There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) The existence of the Defendant's identical conduct particular to the matter at issue; (b) Defendant's violations of the FDCPA, specifically 15 U.S.C. § 1692e and 15 U.S.C. § 1692g; (c) The availability of statutory penalties; and (d) Attorneys' fees and costs.

iii. **Typicality**: The claims of the Plaintiff are typical of those of the class they seek to represent. The claims of the Plaintiff and the members of the class originate from the same conduct, practice, and procedure, on the part of the Defendant. Thus, if brought and prosecuted individually, the claims of each class member would require proof of the same material and substantive facts. Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed class. Plaintiff asserts identical claims and seeks identical relief on behalf of the unnamed class members.

iv. **Adequacy**: Plaintiff will fairly and adequately protect the interests of the class and has no interest adverse to or which directly and irrevocably conflicts with the interests of other members of the class. Plaintiff is willing and prepared to serve this Court and the proposed class. The interests of the Plaintiff are co-extensive with and not antagonistic to those

of the absent class members. Plaintiff has retained the services of counsel who are experienced in FDCPA litigation and will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent class members. Neither the Plaintiff nor their counsel have any interests which might cause them to not vigorously pursue the instant class action lawsuit.

v. **Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members of the class would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender. Furthermore, a class action is superior for the fair and efficient adjudication of this matter because individual actions are not economically feasible, members of the class are likely to be unaware of their rights or that they were violated, and Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

**WHEREFORE**, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

1. An order certifying that Count I may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and the undersigned counsel to represent the class previously set forth and defined above.

2. Adjudging that Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g.

3. An award of statutory damages for Plaintiff and the class members pursuant to 15 U.S.C. § 1692k;

4. Attorneys' fees, litigation expenses and costs of suit pursuant to 15 U.S.C. § 1692k; and

5. Such other and further relief as the Court deems proper.

Dated: Floral Park, New York
September 30, 2020

By: /s/ Ryan Gentile
_____
Ryan Gentile, Esq.
*Attorney for Plaintiff*
110 Jericho Turnpike – Suite 100
Floral Park, NY 11001
Tel: (201) 873-7675
Fax: (516) 305-5566
rlg@lawgmf.com